IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SCOTT JOHNSON,

        Plaintiff,

    v.

NUOC MIA VIEN DONG 2, LLC,

        Defendant.

Case No.  21-cv-01618-CRB

**ORDER GRANTING MOTION FOR DEFAULT JUDGMENT**

Plaintiff Scott Johnson, a quadriplegic who uses a wheelchair, Compl. (dkt. 1) ¶ 1, sued Defendant Nuoc Mia Vien Dong 2, LLC (Nuoc) for failure to provide accessible dining services at its restaurant in violation of the federal Americans with Disabilities Act (ADA) and the California Unruh Civil Rights Act (Unruh Act), id. ¶¶ 22–33.  Johnson now moves for default judgment. Mot. for Default Judgment (dkt. 17).  The Court grants his motion and awards $4,000 in damages, along with $1,295 in attorneys' fees and $835 in costs, and enters an injunction requiring Nuoc to provide accessible dining surfaces.

## I.      BACKGROUND

In November 2020, Johnson visited the restaurant in San Jose, California to avail himself of its services and to determine if it complies with disability access laws.  Compl. ¶¶ 2, 8.  Johnson alleges that the restaurant lacked wheelchair-accessible dining surfaces; specifically, that there was insufficient "knee or toe clearance" under the dining surfaces.  Id. ¶ 12.  Johnson alleges that he was deterred from visiting the restaurant in the future.  Id. ¶ 20.

Johnson filed his complaint on March 8, 2021, asserting claims under the ADA and the Unruh Act.  See id.  When Nuoc failed to answer the complaint, Johnson sought and received an entry of default from the Clerk on May 4, 2021.  Mot. for Entry of Default (dkt. 15); Clerk's Entry

1    of Default (dkt. 16). Johnson now seeks a default judgment against Nuoc, an order requiring Nuoc

2    to provide wheelchair accessible dining surfaces, $4,000 in statutory damages, and $2,761 as

3    attorneys' fees and costs. Mot. for Default Judgment at 2.

4    **II.**      **LEGAL STANDARD**

5        "[E]ntry of a default judgment is within the discretion of the court." <u>Lau Ah Yew v.</u>

6    <u>Dulles</u>, 236 F.2d 415, 416 (9th Cir. 1956). Upon an entry of default, "the factual allegations of the

7    complaint, except those relating to the amount of damages, will be taken as true." <u>See</u> <u>Derek</u>

8    <u>Andrew, Inc. v. Poof Apparel Corp.</u>, 528 F.3d 696, 702 (9th Cir. 2008).

9        A court deciding a motion for default judgment has "an affirmative duty to look into its

10    jurisdiction over both the subject matter and the parties," <u>In re Tuli</u>, 172 F.3d 707, 712 (9th Cir.

11    1999), including whether notice was adequately given, <u>see</u> <u>Omni Capital Int'l, Ltd. v. Rudolf</u>

12    <u>Wolff & Co.</u>, 484 U.S. 97, 104 (1987), <u>superseded by statute on other grounds</u>; Fed. R. Civ. P.

13    55(a); <u>accord</u> <u>Dytch v. Bermudez</u>, No. 17-cv-02714-EMC, 2018 WL 2230945, at *2 (N.D. Cal.

14    May 16, 2018), <u>reconsideration denied</u>, 2018 WL 3643702 (N.D. Cal. Aug. 1, 2018). In

15    determining whether to enter default judgment, this Court examines the "<u>Eitel</u> factors":

16          (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's
17          substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at
          stake in the action, (5) the possibility of a dispute concerning material facts, (6)
18          whether the default was due to excusable neglect, and (7) the strong policy
          underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

19    <u>Eitel v. McCool</u>, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

20    **III.**      **DISCUSSION**

21        In analyzing this motion for default judgment, the Court must determine whether (A) it has

22    jurisdiction, (B) Johnson gave Nuoc adequate notice, (C) the <u>Eitel</u> factors support the entry of

23    default judgment, and (D) the remedy that Johnson seeks is appropriate.

24        **A.**      **Jurisdiction**

25        The Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 because

26    the complaint alleges a violation of the ADA, a federal statute. <u>See</u> Compl. ¶ 5; 28 U.S.C. § 1331.

27    Under 28 U.S.C. § 1367, the Court has supplemental jurisdiction over the related state law claim.

28    <u>See</u> Compl. ¶ 6; 28 U.S.C. § 1367.

United States District Court
Northern District of California

1   The Court also has general personal jurisdiction over Nuoc.  A federal court can exercise

2   general jurisdiction over a defendant that is "essentially at home" in the forum state.  <u>Goodyear</u>

3   <u>Dunlop Tires Operations, S.A. v. Brown</u>, 564 U.S. 915, 919 (2011).  Companies are found to be

4   "essentially at home" where they are incorporated, headquartered, or (in "exceptional case[s]")

5   otherwise "at home."  <u>Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.</u>, 141 S. Ct. 1017, 1024

6   (2021).  Nuoc is headquartered in California, and thus is subject to personal jurisdiction in the

7   state.  <u>See id.</u> at 1024; <u>Public Records</u> (dkt. 17-5) at 3.  Venue is also proper under 28 U.S.C. §

8   1391 because the event giving rise to the claim occurred in the Northern District of California.

9   <u>See</u> Compl. ¶ 7, 28 U.S.C. § 1391.

10   **B.    Notice**

11   Service of process was sufficient in this case.  Under Rule 4 of the Federal Rules of Civil

12   Procedure, a person can serve a corporation in a judicial district of the United States by "following

13   state law for serving a summons in an action brought in courts of general jurisdiction in the state

14   where the district court is located or where service is made," or by "delivering a copy of the

15   summons and of the complaint to an officer, a managing or general agent, or any other agent

16   authorized by appointment or by law to receive service of process and—if the agent is one

17   authorized by statute and the statute so requires—by also mailing a copy of each to the defendant."

18   Fed. R. Civ. P. 4(e)(1), 4(h)(1)(B).  California law allows for personal service, service by mail,

19   and various methods of substituted service.  <u>See</u> Cal. Code Civ. P. 415.10, 415.20, 415.30, 416.10.

20   Here, Nuoc was served through substituted service—a registered California process server served

21   a person at the business address who was apparently in charge of the business—and was mailed

22   copies of the documents.  Proof of Service of Summons (dkt. 13).  Therefore, service of process

23   was sufficient under both Rule 4(e)(1) and Rule 4(h)(1)(B).

24   **C.    <u>Eitel</u> Factors**

25   This Court examines the "<u>Eitel</u> factors" to determine whether to grant default judgment.

26   <u>Eitel</u>, 782 F.2d 1471–72.  Here, the <u>Eitel</u> factors weigh in favor of granting default judgment.

27   **1.    Possibility of Prejudice to Plaintiff**

28   Absent a judgment in Johnson's favor, he has no way to recover for the alleged ADA and

United States District Court
Northern District of California

1   Unruh Act violations.  Therefore, this factor supports a grant of default judgment.  See, e.g.,

2   Willamette Green Innovation Ctr., LLC v. Quartis Capital Partners, No. 14-cv-00848, 2014 WL

3   5281039, at *6 (N.D. Cal. Jan. 21, 2014) ("Denying a plaintiff means of recourse is by itself

4   sufficient to meet the burden posed by this factor.") (citations omitted).

    **2.      Merits of Claim and Sufficiency of Complaint**

5

6       The second and third Eitel factors require Johnson to state a claim that sufficiently

7   supports the relief sought.  See Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978).

    **a.      Article III Standing**

8

9       To have Article III standing to bring an ADA claim, a plaintiff must establish (1) that they

10  have suffered an injury in fact, (2) that their injury is fairly traceable to a defendant's conduct, and

11  (3) that their injury would likely be redressed by a favorable decision.  See Lujan v. Defs. of

12  Wildlife, 504 U.S. 555, 560–61 (1992).  To show an "injury in fact," a plaintiff must establish "an

13  invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or

14  imminent, not conjectural or hypothetical."  Lujan, 504 U.S. at 560 (citations and internal

15  quotation marks omitted).  Where, as here, a party seeks injunctive relief, "past wrongs do not in

16  themselves amount to [the] real and immediate threat of injury" necessary for standing.  City of

17  Los Angeles v. Lyons, 461 U.S. 95, 103 (1983).  Rather, a party must show "continuing, present

18  adverse effects" of the defendants' actions.  Id. at 102.

19      "A plaintiff experiences continuing adverse effects where a defendant's failure to comply

20  with the ADA deters her from making use of the defendant's facility. . . .  So long as the

21  discriminatory conditions continue, and so long as a plaintiff is aware of them and remains

22  deterred, the injury under the ADA continues."  Civ. Rights Educ. & Enf't Ctr. v. Hosp. Props.

23  Trust, 867 F.3d 1093, 1098–99 (9th Cir. 2017) (internal quotations omitted).  Accordingly, the

24  Ninth Circuit has held that a plaintiff's vague allegations that they intended to visit a facility, are

25  deterred by the facility's non-compliance, and would visit when non-compliance is cured are

26  sufficient to establish standing.  See, e.g., Civ. Rights Educ. & Enf't Ctr., 867 F.3d at 1099; Skaff

27  v. Meridien N. Am. Beverly Hills, LLC, 506 F.3d 832, 840–41 (9th Cir. 2007); Velez v. Il Fornaio

28  (Am.) Corp., 808 F. App'x 581, 582 (9th Cir. 2020); Whitaker v. Pan. Joes Inv'rs LLC, 840 F.

United States District Court
Northern District of California

4

App'x 961, 963–64 (9th Cir. 2021).

As discussed below, Johnson is disabled within the meaning of the ADA and alleges that he personally encountered a barrier at the restaurant.  Compl. ¶ 12.  Johnson's allegations that this barrier has deterred him from visiting the restaurant, id. ¶ 20, are almost identical to those allegations that the Ninth Circuit has found sufficient to satisfy the standing requirement.  Therefore, Johnson has adequately established standing.

### b.      ADA Claim

To state a claim under the ADA, a "plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability."  Molski v. M.J. Cable, Inc., 481 F.3d 724, 730 (9th Cir. 2007).  "The third element is satisfied when there is a violation of applicable accessibility standards."  Rodriguez v. Barrita, Inc., 10 F. Supp. 3d 1062, 1073 (N.D. Cal. 2014).

Here, the first and second requirements are clearly met.  Johnson's quadriplegia is a disability within the meaning of the ADA, as it is a physical impairment that substantially limits major life activities.  See 42 U.S.C. § 12102.  And restaurants are places of public accommodation under the ADA.  See 42 U.S.C. § 12181(7)(B).

With respect to the third element, the 2010 ADA Accessibility Guidelines (ADAAG) specify that at least 5 percent of the seating spaces and standing spaces at the dining surfaces shall comply with the Section 902 requirements mandating knee and toe clearance underneath these surfaces.  ADAAG §§ 226.1, 902.2.  When required, toe clearance—the space under an element from a height of 0 to 9 inches, id. § 306.2.1—must extend a minimum of 17 inches under the element, id. § 306.2.3.  Required knee clearance—the space under an element from a height of 9 to 27 inches, id. § 306.3.1—must be 11 inches deep minimum at 9 inches above the ground, and 8 inches deep minimum at 27 inches above the ground, id. § 306.3.3.

Johnson alleges that the dining surfaces at the restaurant did not have sufficient knee or toe clearance.  Compl. ¶ 12.  While only 5 percent of dining surfaces are required to meet the accessibility standards, Johnson alleges that Nuoc "failed to provide wheelchair accessible dining

1  surfaces in conformance with the ADA standards." Id. ¶ 10.  Accordingly, Johnson's allegations

2  establish that the restaurant violates accessibility standards, and Johnson was denied access to the

3  dining surfaces because of his disability.  Thus, he has sufficiently alleged an ADA violation.

### c.      Unruh Act Claim

5      A violation of the ADA is a per se violation of the Unruh Act, see Cal. Civ. Code § 51(f),

6  regardless of whether the discrimination was intentional, see Munson v. Del Taco, Inc., 208 P.3d

7  623, 625 (Cal. 2009); Lentini v. Cal. Ctr. for the Arts, 370 F.3d 837, 847 (9th Cir. 2004).

8  Therefore, since Johnson has adequately pleaded an ADA violation, he has also adequately

9  pleaded an Unruh Act violation.

### 3.      Money at Stake

11      A court must also consider the amount of money at stake when deciding whether to grant

12  default judgment.  See Eitel, 728 F.2d at 1472.  "Default judgment is disfavored where the sum of

13  money at stake is too large or unreasonable in light of defendant's actions."  Truong Giang Corp.

14  v. Twinstar Tea Corp., No. C 06-03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29,

15  2007).  Here, Johnson only seeks $6,761 in damages, of which $4,000 is the minimum statutory

16  damages under the Unruh Act.  See Cal. Civ. Code § 52(a).  Accordingly, this factor weighs in

17  favor of granting default judgment.

### 4.      Dispute Over Material Facts

19      There is no dispute over material facts, because on an entry of default by the Clerk, the

20  plaintiff's factual allegations are taken as true.  See Derek Andrew, Inc., 528 F.3d at 702.

### 5.      Excusable Neglect

22      Nuoc has not shown excusable neglect.  Johnson served Nuoc with the Complaint, Motion

23  for Entry of Default Judgment, and Motion for Default Judgment, and Nuoc has remained

24  unresponsive.  Memo. of P. & A. at 12.

### 6.      Policy Favoring Decision on the Merits

26      A "[d]efendant's failure to answer a [p]laintiff's Complaint makes a decision on the merits

27  impractical, if not impossible."  PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D.

28  Cal. 2002).  Therefore, because Nuoc has not appeared in this case, a decision on the merits is

*United States District Court*
*Northern District of California*

6

1    unlikely.

2        In sum, Johnson has met the requirements for a default judgment.  See Eitel, 782 F.2d at

3    1471–72.

4        **D.    Remedy**

5        Johnson seeks injunctive relief, statutory damages, attorneys' fees, and costs.  The Court

6    grants injunctive relief, $4,000 in damages, $1,295 in attorneys' fees, and $835 in costs.

7                    **1.    Injunctive Relief**

8        Under the ADA, injunctive relief shall be granted in cases of violations of accessibility

9    standards.  See 42 U.S.C. § 12188(a)(2).  Thus, because Johnson has sufficiently established an

10   ADA violation, he is entitled to an injunction requiring Nuoc to remedy the alleged violation at its

11   restaurant.

12                    **2.    Damages**

13       Under the Unruh Act, a plaintiff denied equal access to a covered establishment is entitled

14   to a minimum of $4,000 in statutory damages.  Cal. Civ. Code § 51(f).  Therefore, Johnson is

15   entitled to the $4,000 that he seeks for Nuoc's singular violation of the Unruh Act.

16                    **3.    Attorneys' Fees**

17       The ADA and the Unruh Act both entitle plaintiffs to recover attorneys' fees, subject to the

18   court's discretion.  42 U.S.C. § 12205 (enabling district courts to award reasonable attorneys' fees

19   to the prevailing party in an ADA action); Cal. Civ. Code § 52 (noting that a court may determine

20   attorneys' fees for Unruh Act violations).  Here, Johnson seeks $1,926 in attorneys' fees for work

21   done by his legal counsel, Potter Handy, LLP.  Potter Handy, LLP Invoice (dkt. 17-3).  When

22   calculating attorneys' fees, "the district court applies the lodestar method, multiplying the number

23   of hours reasonably expended by a reasonable hourly rate."  Ryan v. Editions Ltd. W7., Inc., 786

24   F.3d 754, 763 (9th Cir. 2015) (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).  "A

25   reasonable hourly rate is ordinarily the prevailing market rate in the relevant community."  Kelly

26   v. Wengler, 822 F.3d 1085, 1099 (9th Cir. 2016) (internal quotation marks and citation omitted).

27   The party requesting attorneys' fees has the burden of providing billing records demonstrating that

28   the hours requested are reasonable.  Gonzalez v. City of Maywood, 729 F.3d 1196, 1202 (9th Cir.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   2013).

2                          **a.      Hourly Rates**

3          Johnson seeks hourly rates of $595 for attorney Mark Potter, $400 for attorney Faythe

4   Gutierrez, $200 for legal assistant Marcus Handy, and $100 for legal assistants Andrew Sheaffer,

5   Deepa Shetty, Geraldine Manalo, and Tanpreet Pannu.  Memo. of P. & A. at 19.

6          Johnson submitted the declarations of attorney Russell Handy and fee experts Richard

7   Pearl and John O'Connor, and a 2018 rate report to support the hourly rates requested for his

8   attorneys.  Handy Decl. (dkt. 17-3); Pearl Decl. (dkt. 17-8); Rate Report (dkt. 17-9); O'Connor

9   Decl. (dkt. 17-10).  Within this district, multiple recent decisions have considered identical

10  declarations in similar suits by the same attorney and fee experts and found them to have limited

11  value in determining reasonable hourly rates.  See Love v. Undefeated Apparel Inc., No. C 20-

12  00330 WHA, 2021 WL 1375911, at *5–6 (N.D. Cal. Apr. 12, 2021); Johnson v. Cortese, No.

13  5:19-cv-02671-EJD, 2020 WL 7495164, at *9 (N.D. Cal. Dec. 21, 2020) (noting that Pearl and

14  O'Connor lack experience in ADA litigation and their declarations were prepared in connection

15  with other, dissimilar cases).  These same decisions found rates of $475 per hour for Mark Potter

16  and $250 per hour for Faythe Gutierrez to be reasonable.  See Undefeated Apparel Inc., 2021 WL

17  1375911, at *6; Cortese, 2020 WL 7495164, at *10.

18         Johnson cites the Rate Report to argue for higher rates.  Memo. of P. & A. at 16.

19  Additionally, Johnson references numerous Central District of California decisions granting Potter

20  Handy's requested hourly rates.[1]  Johnson also relies on two less recent and factually dissimilar

21  cases in this district—Love v. Rivendell II, Ltd., No. 3:18-cv-03907-JST (EDL) (N.D. Cal. April

22  18, 2019) and Johnson v. Khalsa Insurance Agency, Inc., No. 5:19-cv-02725-SBA (N.D. Cal.

23  April 8, 2020)—which awarded attorneys' fees at a rate of $650 per hour to attorney Mark Potter.

24

25  ───────────────

26  [1] See, e.g., Lindsay v. Grupo Glemka, No. CV 18-5136 MRW, 2019 WL 12381192 (C.D. Cal.
    July 19, 2019); Whitaker v. Hieu Invs., LLC, No. 218CV10584SVWMRW, 2019 WL 7877339

27  (C.D. Cal. Nov. 21, 2019); Lopez v. Getz, No. 218CV02152SJOMRW, 2020 WL 1025678 (C.D.
    Cal. Jan. 10, 2020); Lammey v. Plaza Segundo, LLC, No. LACV1904484JAKPLAX, 2019 WL

28  8638804 (C.D. Cal. Dec. 20, 2019) (using the plaintiff's requested rates, but reserving
    determination on if these rates are appropriate); Arroyo v. Cervantes, No.
    SACV1900182JVSADS, 2020 WL 2478793 (C.D. Cal. Apr. 2, 2020).

1    Memo. of P. & A. at 19; see also Johnson v. In Suk Jun, No. 19-cv-06474-BLF, 2020 WL

2    6507995, at *9 (N.D. Cal. Nov. 5, 2020) (noting that Love v. Rivendell II, Ltd. was a complex

3    class action matter and that the court awarded attorneys' fees in Johnson v. Khalsa Insurance

4    Agency, Inc. without explicit reliance on any case law).  Furthermore, Johnson provides no

5    support for the requested $400 per hour rate for Faythe Gutierrez.  See Memo. of P. & A. at 19;

6    Handy Decl. ¶ 4.

7          As for the paralegals and legal assistants, aside from a brief discussion of Marcus Handy's

8    background, Johnson provides no supporting evidence to warrant a $200 per hour rate for a legal

9    assistant with twelve years of experience on disability litigation cases.  See Handy Decl. ¶ 6.

10   Johnson also fails to provide information regarding the experience and qualifications of the

11   various individuals listed on the invoice as billing at a rate of $100 per hour, but the declaration of

12   Russell Handy notes that Potter Handy bills for work done by paralegals and legal assistants at a

13   rate of $100 per hour.  Id. ¶ 5.  Although Johnson cites only two cases from the Central District of

14   California to support the $100 per hour billing rate for paralegals and legal assistants, courts in the

15   Northern District of California have recently found an hourly rate of $100 reasonable for

16   paralegals and legal assistants at Potter Handy.  Id.; see Johnson v. Shahkaramai, No. 5:20-cv-

17   07263-BLF, 2021 WL 1530940, at *10 (N.D. Cal. Apr. 19, 2021).

18         The Court grants attorneys' fees at rates of $475 per hour for Mark Potter, $250 per hour

19   for Faythe Gutierrez, and $100 per hour for Marcus Handy and all other paralegals and legal

20   assistants—Andrew Sheaffer, Deepa Shetty, Geraldine Manalo, and Tanpreet Pannu.  The Court's

21   ruling is not based merely on prior decisions, but also on the lack of compelling evidence

22   submitted by Johnson to support the rates that he seeks.  If Johnson or his counsel believe that a

23   higher rate is warranted, they should prepare a more thorough analysis of the market rate for

24   similar cases.

25                            b.      Reasonable Hours

26         Johnson submits an invoice for this suit that totals 6.5 hours of work billed.  Potter Handy,

27   LLP Invoice.  The Court has reviewed the invoice and finds that the time billed is reasonable.  Id.

28         Accordingly, with the adjusted hourly rates and hours, the attorneys' fees award totals

United States District Court
Northern District of California

9

$1,295 as shown below.

| Attorney/Paralegal | Total Time (hours) | Hourly Rate | Amount |
|---|---|---|---|
| M. Potter | .8 | $475 | $380 |
| F. Gutierrez | 2.3 | $250 | $575 |
| M. Handy | 1.9 | $100 | $190 |
| T. Pannu | .2 | $100 | $20 |
| G. Manalo | .3 | $100 | $30 |
| D. Shetty | .4 | $100 | $40 |
| A. Sheaffer | .6 | $100 | $60 |
| **Total** | **6.5** | | **$1,295** |

### 4.    Litigation Costs

Johnson requests $835 in litigation expenses, which includes the cost of service, filing fees, and investigation fees. Id. A court may, in its discretion, award litigation costs, including investigation fees, to the prevailing party in a discrimination action. 42 U.S.C. § 12205; see Johnson v. VN Alliance LLC, No. 18-cv-01372-BLF, 2019 WL 2515749, at *9 (N.D. Cal. June 18, 2019) (allowing investigator fees to be recovered as litigation expenses). Thus, the Court awards the requested $835 in litigation expenses to Johnson.

## IV.    CONCLUSION

For the foregoing reasons, the Motion for Default Judgment is granted, and Johnson is awarded injunctive relief, $4,000 in statutory damages, $1,295 in attorneys' fees, and $835 in litigation expenses and costs.


**IT IS SO ORDERED.**

Dated: July 30, 2021



CHARLES R. BREYER
United States District Judge